IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **DAVID W. SHELDON,** | ) | **CASE NO. 8:06CV31** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| V. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Summary Judgment filed by the Defendant, Unum Life Insurance Company of America ("Unum"). (Filing No. 51). Unum contends that the undisputed facts show that it is entitled to summary judgment on all claims brought against it by Plaintiff David Sheldon. Sheldon opposes the motion. The matter has been fully briefed, and both parties have offered evidence in support of their positions. For the reasons that follow, the motion will be granted.

### *Factual Background*

Defendant Unum Life Insurance Company of America ("Unum") is an insurance company licensed in Maine, and Plaintiff David Sheldon was insured by Unum under a long-term disability policy (hereafter the "Policy").[1] After Sheldon was injured in the course and scope of his employment on November 23, 1999, he applied for benefits under the Policy. Unum determined that Sheldon was totally disabled within the meaning of the Unum long-term disability insurance policy, and Unum began making payments to Sheldon

---

[1] The evidence offered in support of the motion for summary judgment is contained in Filing Nos. 53 and 57, and evidence offered in opposition to the motion is at Filing No. 55. Except as noted in the Memorandum, the factual background is taken primarily from the Statement of Undisputed Facts contained in the Defendant's brief (Filing No. 52), paragraphs 3 - 16 and 19 - 21.

pursuant to the Policy. The monthly gross disability payment under the Policy was $1,464.59, which was reduced by the amount of Sheldon's monthly workers' compensation benefit and indemnity payments. (Filing No. 53, Holmquist Aff. Ex. A, 0011-13).

Sheldon also filed an application for disability benefits under the Social Security Act. Unum continued to pay Sheldon his long-term disability benefit, reduced only by the amount of the workers' compensation benefits, pending the outcome of the social security benefit application. Eventually, the Social Security Commissioner approved Sheldon's application, and a lump sum benefit award was issued to Sheldon for past benefits due to him. From the lump sum award, Unum sought repayment of the long-term disability benefits that Unum had overpaid to Sheldon while Sheldon's social security application was pending. When Sheldon refused to repay the amount of the Policy overpayment, Unum began to recoup the overpayment by reducing or eliminating the amount of the monthly benefit it paid to Sheldon under the Policy. Because the total offsets for workers' compensation and social security benefits that Unum contends were authorized against Sheldon's monthly long-term disability benefit would have reduced the long-term disability insurance benefit to an amount less than the Policy's stated monthly minimum payment, Sheldon's benefit eventually was adjusted to the monthly minimum payment permitted under the Policy.

***Applicable Policy Provisions***

The Policy provides that the benefits payable under the policy are subject to certain offsets. In the final step in calculating benefits due under all benefit coverage options, "any deductible sources of income" are "subtract[ed] from [the insured's] gross disability

payment..." (Holmquist Aff. Ex. A at 0025). Under the Policy's heading, "What are Deductible Sources of Income?" the policy states:

> Unum will subtract from your gross disability payment the following deductible sources of income:
>
> 1) The amount that you receive or are entitled to received under:
>
> • a workers' compensation law.
> • an occupational disease law.
> • any other act or law with similar intent. . . .
>
> 3) The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under:
>
> • the United States Social Security Act.
> • the Canada Pension Plan.
> • the Quebec Pension Plan.
> • any similar plan or act.

(*Id.* 0027-28).

In addition, the Policy permits Unum "to recover any overpayments" that are made due to an insured's "receipt of deductible sources of income." (*Id.* 0015).

The Policy also states that if an insured is eligible to receive benefits from a deductible source of income, but the question of eligibility is pending or being appealed, then Unum may estimate the benefit amount that will be due if the insured is found to be eligible, subtract the estimated benefit from the monthly long-term insurance benefit, and pay only the reduced amount of long term insurance benefit. However, Unum may not reduce the long-term disability payment by an estimated benefit if the insured executes a "payment option form." The payment option form provides that the insured agrees to pay Unum any overpayment caused by a subsequent receipt of deductible sources of income, such as workers' compensation or social security benefits. (*Id.* 0030).

A minimum monthly benefit payment due under the Policy is described as the greater of $50 per month or 15 percent of the insured's gross disability payment. (*Id.* 0029). Sheldon's minimum monthly benefit is $219.69. (Filing No. 59, Holmquist Dep. 59:19).

In opposition to the motion, Sheldon has offered his own affidavit in which he states that he did not consent to the withholding of his benefits; he did not sign waivers agreeing to the offset of his social security benefits; and he did not sign the "relevant documents." He also states that, despite the fact that he was being represented by counsel, he received correspondence directly from Unum. (Filing No. 55, Sheldon Aff. ¶¶ 2-4).

### *Standard of Review*

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## *ANALYSIS*

### *Breach of Contract Claim*

Sheldon claims that Unum breached its contract with him when it reduced Sheldon's monthly long-term disability payments without Sheldon's permission. (Complaint at ¶10). Unum contends that it is entitled to summary judgment on this claim because, in reducing Sheldon's monthly long-term disability benefits by the amount of workers' compensation and social security benefits that Sheldon received, Unum exercised its contractual rights that are unambiguously set forth in the Policy.

In interpreting an insurance policy, like any contract, the court must determine as a matter of law whether the policy is ambiguous. *Reisig v. Allstate Ins. Co.,* 645 N.W.2d 544, 550 (Neb. 2002).

> An insurance policy is a contract. When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. . . . A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. An ambiguous insurance policy will be construed in favor of the insured. The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them.

*Guerrier v. Mid-Century Ins. Co.,* 663 N.W.2d 131, 134-35 (Neb. 2003). The Court concludes that the Policy is not ambiguous, and, therefore, its meaning must be determined as a matter of law. The Policy uses ordinary language to explain the rights and responsibilities of the insurer and the insured. The Court finds that the Policy plainly grants Unum the right to take the offsets and to recoup the overpayments in the manner employed in Sheldon's case.

The Policy states clearly that Unum has the authority to reduce the monthly long-term disability benefit payable under the Policy by the amount an insured receives from other deductible sources of income. "Deductible sources of income" is defined and expressly includes workers' compensation benefits and Social Security Act benefits. The Policy unequivocally states that Unum had the right to take the offset for the workers

compensation benefit that Sheldon was already receiving at the time the Policy benefits commenced.

Sheldon attempts to create a genuine issue regarding whether Unum had authority to recoup its overpayments to Sheldon that were caused by the subsequent award of social security benefits by stating in his August 23, 2007, affidavit that he did not sign any waiver or affix his signature to any "relevant documents." (Filing No. 55, Sheldon Affidavit). His affidavit statements, however, contradict his deposition testimony. During his April 11, 2007, deposition, Sheldon identified his signature that is located at the bottom of the March 6, 2004, payment option form. (Filing No. 53 and 59, Sharp Affs. at Sheldon Dep. cover page, 29-31, Ex. 7). The Eighth Circuit Court has held "many times that a party may not create a question of material fact, and thus forestall summary judgment, by submitting an affidavit contradicting his own sworn statements in a deposition." *Dotson v. Delta Consol. Indus., Inc.* 251 F.3d 780, 781 (8th Cir. 2001) citations omitted; *see Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006)(stating that "a properly supported motion for summary judgment is not defeated by self-serving affidavits.") Considering Sheldon's deposition testimony, the Court concludes that Sheldon's self-serving affidavit statements are not sufficient to create a *genuine* issue of fact related to the validity of the payment option forms.

The Court finds that there is no dispute that Sheldon signed at least one of the two payment option forms, *i.e.*, the March 6, 2004, form,[2] several months before the Social

---

[2] There is evidence that Sheldon also signed a payment options form dated November 17, 2000 (Filing No. 16, Ex. A), but the Court's finding that Sheldon had an obligation to repay the overpayment is based on the March 6, 2004, form alone, as Sheldon's signature on that document is sufficient to establish Sheldon's agreement and obligation to repay Unum.

Security Administration approved his application for benefits on September 18, 2004. By executing the form, Sheldon requested the Unum pay an unreduced long-term disability insurance benefit to him pending the resolution of his application for social security benefits in exchange for Sheldon's promise to repay any money that was overpaid to him upon his receipt of any social security award. (Holmquist Aff. Ex. C, form dated March 6, 2004). The Policy establishes that Unum has the right to recoup overpayments made to Sheldon by reducing or eliminating the monthly benefit until the overpayment is repaid.

Sheldon makes two other arguments in support of his breach-of-contract claim, neither of which is persuasive. First, Sheldon argues that Unum's conduct in taking offsets retroactively violates the Policy, because offsets can only be applied to benefits received in the future. Sheldon does not support this argument with any facts or citation to the Policy. I found no such limitation in the Policy, but rather a specific provision that permits Unum to pro-rate any lump sum award that constitutes a deductible source of income over the period for which the award was given. (Holmquist Aff. Ex. A, 0030).

Second, Sheldon argues that Unum erroneously calculated his benefits by failing to take into account whether an attorney fee was associated with the workers' compensation offset and by improperly calculating Sheldon's repayment obligation following the social security benefit award. With regard to the workers' compensation offset, Sheldon has not come forward with evidence to show that attorneys fees were deducted from the workers' compensation payments; or, in the alternative, that if fees were deducted, how that might affect his minimum monthly payment. Unum has stated that a deduction of attorney fees from an insured's workers' compensation payments would not affect the calculation of the insured's minimum monthly payment. (Filing No. 59, Holmquist

Dep. 59-60). With regard to the effect of the social security award, Sheldon offers the affidavit of William Cheese, CPA. Cheese simply opines that $32,292.00 would be owed by Unum to Sheldon if recoupment for the social security benefit award was not permitted under the Policy. Because the Court has concluded that Unum was within its contractual rights to recoup the overpayment of long-term disability benefits after social security benefits were awarded, there is no breach-of-contract claim inferred from the Cheese affidavit.

The Court finds no evidence that Unum has breached the contract with its insured. The Policy unambiguously authorized Unum to take the actions that Sheldon challenges in this breach-of-contract claim. *See Wilson v. Life Ins. Co. of North America*, 424 F.Supp.2d 1146, 1158 (D.Neb. 2006). Because there are no material facts in dispute, the Defendant's motion for summary judgment on the breach-of-contract claim will be granted.

### Bad Faith Claim

Because the Court concludes that the policy expressly authorized Unum to take the offsets to recoup overpayments, Sheldon's claim based on bad faith will also be dismissed. Pursuant to Nebraska law, a bad-faith claim requires the insured to show "an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Radecki v. Mutual of Omaha Ins. Co.*, 583 N.W.2d 320, 325 (Neb. 1998). The Nebraska Supreme Court has stated whether a reasonable dispute is present is "appropriately decided by the Court as a matter of law." *Williams v. Allstate Indemnity Co.*, 669 N.W.2d 455, 460 (Neb. 2003).

The Court finds that no reasonable dispute is presented on the facts of this case. The policy's unambiguous language provides the reasonable basis for Unum's decision to offset Sheldon's workers' compensation award and to recoup overpayments of which it became aware following the lump sum payment of social security disability benefits to Sheldon. Because there is no evidence to create a genuine issue of fact to support a bad-faith claim against Unum, the motion will granted as to the bad-faith claim.

### FDCPA Claim

In his final claim, Sheldon alleges that Unum's actions constitute a violation of the Fair Debt Collection Practices Act, (hereafter "FDCPA"), 15 U.S.C. § 1692 *et seq.* Unum seeks summary judgment on this claim because it is not a "debt collector" as defined under the FDCPA, and because Unum did nothing improper in contacting Sheldon directly, rather than through counsel, about Sheldon's repayment obligation. In connection with the Defendant's motion to dismiss, the Court noted that Unum violated the FDCPA, if at all, if it acted as a "debt collector" under the following definition: "creditors, who in the process of collecting their own debts, use any names which would indicate that a third person is collecting or attempting to collect such debts." *Kempf v. Famous Barr Co.*, 676 F. Supp. 937, 938 (E.D. Mo. 1988) (citing 15 U.S.C. § 1692a(6)).

Sheldon alleges that Unum sent several letters to Sheldon, directing him to repay the overpayments by sending a check to the "Financial Recovery Unit." According to Sheldon, when measured against the objective, unsophisticated, consumer standard, a consumer would believe that Unum was sending the matter to a debt collection entity - a third party not associated with Unum. I disagree. In support of the motion for summary judgment, Unum has provided copies of the correspondence that it sent to Sheldon relative

to offsets and recoupment of overpayments. (Filing No. 53, Sharp Aff. Ex. D). The Court has reviewed the letters and finds that they are not misleading.

The letters are prepared on Unum letterhead. They clearly identify Sheldon's contractual obligation, the source of the obligation under the Policy, and provide direction to him to send payment to the Financial Recovery Unit that is part of Unum. The Financial Recovery Unit is not referenced as a separate entity. Indeed, in at least a few places, the unit is referred to as "our" unit. Each of the letters is signed by a Unum employee, whose name and position at Unum are identified in the letters' closings. (Filing No. 53, Holmquist Aff., various documents at Ex. C; Sharp Aff. Ex. D).

Although the unsophisticated consumer standard "protects the uninformed or naive consumer, . . . [it] also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 317 (8th Cir. 2004). Sheldon has not presented any evidence to demonstrate that these communications were atypical or confusing. Sheldon states in his affidavit only that he found the letters to constitute harassment because they were sent to him instead of his attorney. The fact that the letters were sent to him, rather than his counsel, is not sufficient to create a genuine issue of material fact regarding the FDCPA claim. The Court finds that Sheldon has failed to come forward with evidence upon which any reasonable juror could find that these letters are misleading as measured against the unsophisticated consumer standard. *Strand,* 380 F. 3d at 317 (citations omitted) (stating "[a] violation of the FDCPA is reviewed utilizing the unsophisticated-consumer standard which is 'designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung

on the sophistication ladder.'") Accordingly, the Court concludes that Unum is entitled to summary judgment as to that claim.

For all these reasons, the Defendant's motion for summary judgment as a matter of law on all claims is granted. Based on the Defendant's representation that Unum's Counterclaim is now moot, the Counterclaim will be dismissed without prejudice. (Filing No. 52, n. 1). If, for any reason, the Defendant objects to the dismissal of its Counterclaim, it is directed to so inform the Court by filing a written notice within five days of this Memorandum and Order.

IT IS ORDERED:

1. The motions for additional time (Filing Nos. 54 and 57) are granted; and the briefs and evidentiary materials have been considered;
2. The Defendant's Motion for Summary Judgment (Filing No. 51) is granted in all respects;
3. The Complaint including all claims against the Defendant are dismissed with prejudice; and
4. A separate judgment will be filed.

DATED this 23nd day of October, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge